HUNT v. AMERICAN GROCERY CO.

(Circuit Court, D. New Jersey. April 30, 1897.)

1. PRIVATE CORPORATIONS—APPOINTMENT OF RECEIVERS.
   A receiver will not be appointed for a solvent private corporation at the instance of individual stockholders, on the ground that its officers and directors have changed its business from a large wholesale grocery business to a comparatively small specialty business, and have otherwise mismanaged its affairs, in the absence of evidence showing usurpation, fraud, ultra vires, gross negligence, or breach of trust.

2. SAME.
   All questions of policy respecting the management of the business of a private corporation must be left to the sound discretion of the directors, and their acts done in good faith, if within the powers of the corporation, and in furtherance of its purposes, cannot be called in question in judicial proceedings by individual stockholders.

H. Aplington, for complainant.
Washington B. Williams and Arthur L. Livermore, for defendants.

KIRKPATRICK, District Judge. This bill is filed by David Hunt, a stockholder in the American Grocery Company, on behalf of himself and such other stockholders as may desire to become parties to

the suit, praying for the appointment of a receiver, and an injunction restraining the officers and directors from continuing in the management of the business. The intervention of the court is not asked upon the ground of the insolvency of the corporation, but it is alleged in the bill that, the defendant corporation having succeeded to the large wholesale grocery business formerly conducted by various partnerships and corporations, "has recently, in violation of law, unlawfully, without the consent of its stockholders, and through its officers and directors, changed the nature of its business from a large wholesale grocery business to a comparatively small specialty business." In support of this allegation the bill sets out a notice sent by the American Grocery Company to the trade, which is in these words:

"New York, April 2, 1897.

"We beg to call the attention of the trade to our special lines of roasted coffees, ground spices, teas, cigars, farinaceous goods, French goods, and canned goods. Handling only these lines, enables us to better meet the wants of dealers. Price list mailed on application."

The bill also alleges upon information and belief that the business is being grossly mismanaged by its officers and directors; that the company has sold a certain number of its trade-marks, and has discontinued the use of a large number of others; that it has reduced the number of its employés; that it has discontinued the sale of a large number of staple articles, in which there was a large profit, and has sold large quantities of staple goods at less than cost; that it has not taken an account of stock since August, 1896, and that for his personal account the president has purchased certain of the stock of the defendant corporation at less than its par value, and is anxious to buy more if it can be had at a low figure.

The affidavits read in support of the bill enter into no details. The affiants set out that they are acquainted with the character of the business heretofore conducted by Thurber, Whyland & Company and that now being carried on by the American Grocery Company, and that they are not of the same general character, and that the business now carried on by the American Grocery Company is not, in their opinion, a wholesale grocery business. The only knowledge developed on the part of deponents to any of the specific matters set out in the bill is that contained in the affidavits of Corsa, who swears that Marsalis, the president of the defendant company, has sold and offered to sell staple merchandise at prices less than the market price of same; not stating quantity; and Alexander Wiley, who knows that Marsalis has sold and is now offering for sale "large blocks" of staple merchandise at prices much below the market value of the same. There is no proof of the sale or discontinuance of the use of any trade-marks; the staple articles, the sale of which the bill charges has been discontinued, are not enumerated; and there is nothing in the affidavits from which the court can come to the conclusion that any large loss of profit has resulted to the company by the decrease of business which is said to have taken place. If staple goods have been sold, or offered for sale, at less than market prices, the bill charges that it has been done with the sanction and approval and under the direction of the board of directors, who were elected to administer

the affairs of the company. In the absence of proof to the contrary, the court will assume that the directors have acted in good faith, and for the best interests of the company, and that assumption will not be overcome by the mere assertion of opinions to the contrary by those whose judgment may be founded on ignorance or warped by prejudice.

It does not appear from any verified statement that the defendants are performing any act which is not within the scope of the authority conferred by the articles of their incorporation, nor that the president and board of directors, in limiting the number of articles in which they will deal, have not been actuated by honest motives. To cut off from sale articles in which there is found to be no profit is clearly within the discretionary powers of the board of directors, and, unless the complainant has clearly demonstrated that the directors in so doing were controlled by a fraudulent or dishonest purpose, he has no case. Elkins v. Railroad Co., 36 N. J. Eq. 241. All questions of policy respecting the management of the business of a private corporation must be left to the sound, honest discretion of the directors; and their corporate acts, done in good faith, if the same are within the powers of the corporation, and in the furtherance of its purposes, cannot be called in question in judicial proceedings by individual stockholders. The answering affidavits which have been read deny all the material allegations of the bill, both those which are verified and those which are stated to be upon information and belief. The court should not take the conduct of the business out of the hands of those who have been chosen by a majority in interest of the stockholders for that purpose, except upon clear proof of usurpation, ultra vires, fraud, or gross negligence. Thomp. Corp. § 4483. "The appointment of a receiver is a discretionary power, to be exercised only upon good cause shown, upon circumstances disclosed by the proof which show the need of the interference of the court for the protection of creditors or stockholders from breaches of trust by the directors in the performance of their duties." Construction Co. v. Schack, 40 N. J. Eq. 222, 1 Atl. 23; Rawnsley v. Insurance Co., 9 N. J. Eq. 95. This case presents no such grounds as above set forth for the interference of the court, and the dissatisfied stockholders must redress their grievances by ordinary methods. The application for a receiver must be denied.